# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AL-NISA A. SHAW,<br>        Plaintiff,<br><br>v.<br><br>UNITED STATES POSTAL SERVICE,<br>DEREK PALMER, ERIC PUGAR,<br>RICHARD WILSON AND MARK<br>KILLEN,<br>        Defendants. | CIVIL ACTION<br><br><br><br>NO. 18-651 |

## MEMORANDUM OPINION

Pro Se Plaintiff Al-Nisa A. Shaw brings suit against her former employer, the United States Postal Service ("USPS"), and four USPS employees, Derek Palmer, Eric Pugar, Richard Wilson, and Mark Killen, alleging that she was not sufficiently compensated for a temporary duty position and that she suffered workplace harassment. Defendants now move to dismiss Plaintiff's Amended Complaint, arguing that Plaintiff's claims are barred or inadequately pled. For the reasons that follow, Defendants' motion shall be granted.

### I.  BACKGROUND

#### A. Facts

Plaintiff was employed by USPS as a full-time non-career worker from at least 2016 until some point in 2018. Plaintiff alleges that from 2016 forward she "was mercilessly harassed by supervisors, employees both career and noncareer, threatened with physical violence, ostracized in the workplace, and punished in the workplace for being disciplined in [her] work." In exhibits attached to her Amended Complaint, Plaintiff provides in depth descriptions of specific instances where workplace disputes escalated into shouting matches, and threats such as "I'll fuck her up" were made towards Plaintiff. Plaintiff also describes interactions that had a "nasty tone" or reflected her coworkers' attempts to "deliberately undermine" her.

Plaintiff filed grievances with USPS management as well as the American Postal Workers Union ("APWU" or the "Union") regarding the harassment. In approximately late 2016, Richard Wilson, a USPS Station Manager and Plaintiff's then supervisor, participated in a meeting with Plaintiff, Union representatives, and USPS employees regarding the alleged harassment. In early 2017, Wilson attempted to transfer one of Plaintiff's antagonists, but Derek Palmer, a USPS Area Manager, blocked the effort.

Despite ongoing harassment, from March through June of 2017, Plaintiff held a temporary supervisory detail position, known as a "204B." Plaintiff alleges that the position entitled her to increased "Level 17" pay. However, Plaintiff did not receive increased wages for her time in the 204B detail. Plaintiff alleges that all four of the individual Defendants each communicated to Plaintiff that "USPS was pleased with [Plaintiff's] work as a 204B, and fully acknowledged that the pay was incorrect." Plaintiff further alleges that Wilson and Mark Killen, a USPS employee specializing in finance, "stayed in constant contact" with Plaintiff "as they actively worked to get [her] pay corrected."

Plaintiff raised her pay dispute with the Union, which in turn raised the issue with USPS. Plaintiff alleges that Union representatives and Eric Pugar, USPS employee specializing in Labor Relations, called her with an offer of $1000 to settle the dispute, which she rejected. Plaintiff further alleges that in December 2017 the Union accepted a $500 settlement on her behalf. Attached to her Amended Complaint, Plaintiff includes a letter signed by both Union and USPS representative, which states: "The fact circumstances indicate that the employee was le[]d to believe by local management that she was entitled to the higher level pay while on detail, which is incorrect. As such, and only in an effort to be fair, the employee will be paid a one time lump sum payment of $500." Plaintiff alleges that she never approved this settlement, and, in fact,

never received the $500.

Plaintiff alleges that USPS refused to award her the increased pay "in retaliation for filing protected action grievances in relation to the hostile work environment." Further, Plaintiff alleges that a male coworker, Mr. Apoh, was given a 204B assignment, and did receive the increased pay. It appears that Plaintiff estimates she is due approximately $3,400 for her time as a 204B.

Plaintiff also raises a battery of additional issues related to her employment. She alleges that she was been given inferior work assignments that do not account for her physical disabilities or seniority level. Plaintiff alleges that she suffers from various physical ailments, such as migraines, which have been caused or exacerbated by her experience at USPS. Plaintiff alleges that her inferior work assignments required her to shuffle between numerous post offices and be unreasonably exposed to inclement weather. She also alleges that her hours were unduly restricted to four hours a day beginning in December 2017.

### B. Procedural Posture

Because Plaintiff proceeds pro se, her pleadings must be construed liberally, *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003), and the Court must "apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name," *Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 248 (3d Cir. 1999). However, there are limits to the Court's procedural flexibility: "pro se litigants still must allege sufficient facts in their complaints to support a claim" and "they cannot flout procedural rules—they must abide by the same rules that apply to all other litigants." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citations omitted).

Plaintiff filed her initial complaint on February 16, 2018, naming USPS and the four

individuals as defendants. Plaintiff also indicated that her claims arose under 29 U.S.C. § 218, a provision of the Fair Labor Standards Act; 29 C.F.R. § 785.7, a regulation regarding judicial construction of the Fair Labor Standards Act; and 15 U.S.C. § 2087, the whistleblower protection provision of the Consumer Product Safety Improvement Act.

On August 2, 2018, Plaintiff filed an Amended Complaint. In the Amended Complaint, Plaintiff does not name any defendants or specify any causes of action. Rather, Plaintiff sets out a number of grievances related to her employment with USPS, as recounted above. Plaintiff supplements the Amended Complaint with numerous attached exhibits, which include her own in-depth descriptions of certain incidents as well as documentation relating to her employment.

Though Plaintiff has not organized her Amended Complaint into separate legal claims, Plaintiff invokes certain legal precepts, which guide the Court's consideration of this matter. The Court construes the Amended Complaint to raise several different categories of claims against USPS: (1) fraud; (2) violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*; (3) violations of the Labor Management Relations Act ("LMRA"), 29 U.S.C. §§ 141, *et seq.*; (4) Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.*, claims of hostile work environment and retaliation; (5) negligent and intentional infliction of emotional distress; and (6) a whistleblower claim under the Consumer Product Safety Improvement Act ("CPSIA"), 15 U.S.C. § 2087. The Court further construes the Amended Complaint to raise fraud claims against the individual Defendants.[1]

## II. LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

---

[1] Though Plaintiff takes exception to actions taken by APWU, she has not named APWU as a defendant in this action. Accordingly, the Court does not construe the Amended Complaint to raise claims against APWU.

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The Court must "construe the complaint in the light most favorable to plaintiff." *Warren Gen. Hosp. v. Amgen, Inc.*, 643 F.3d 77, 84 (3d Cir. 2011).

### III. DISCUSSION

#### A. Claims Against USPS

##### i. Fraud

Plaintiff consistently refers to her 204B pay dispute as arising in fraud. She alleges:

> It is evident that USPS Management in these efforts did in fact acknowledge the debt of missing pay and made active efforts to correct. And by doing so, were then illegal and fraudulent in their efforts to later deny pay, which essentially is the basis of my Tort Claim.

Defendants counter that sovereign immunity bars any fraud claim against USPS.

"It is well settled that the United States enjoys sovereign immunity from suits and, accordingly, may be sued only if it has waived that immunity." *Beneficial Consumer Disc. Co. v. Poltonowicz*, 47 F.3d 91, 93-94 (3d Cir. 1995). The Postal Service is "an independent establishment of the executive branch of the Government of the United States," *Hooker v. U.S. Post Office, Overbrook Station*, 255 F. App'x 658, 659 (3d Cir. 2007) (quoting 39 U.S.C. § 201), and, thus, "the Postal Service enjoys federal sovereign immunity absent a waiver," *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 484 (2006). "Waivers of federal sovereign immunity must be unequivocally expressed in the statutory text and any such waiver must be strictly construed in favor of the United States." *Beneficial Consumer*, 47 F.3d at 94 (internal punctuation omitted).

The Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671 *et seq.*, governs tort actions against the Postal Service. *See Dolan*, 546 U.S. at 484. The FTCA permits suit against

5

the federal government for torts committed by federal employees:

> [T]he Federal Tort Claims Act waives sovereign immunity as to claims against the United States for money damages for injury caused by the negligent or wrongful act or omission of a government employee acting within the scope of his employment 'under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'

*Beneficial Consumer*, 47 F.3d at 95-96 (quoting 28 U.S.C. § 1346(b)). However, the FTCA does not waive sovereign immunity for all torts: Section 2680(h) specifically preserves sovereign immunity for claims "arising out of . . . misrepresentation [or] deceit." 28 U.S.C. § 2680(h). "As a result, courts have consistently held that fraud claims against the government are not permitted under the FTCA." *Beneficial Consumer*, 47 F.3d at 96.

Plaintiff's claim sounds in precisely the types of actions that remain barred by sovereign immunity under Section 2680(h) of the FTCA. Plaintiff alleges that USPS officials misrepresented the policies governing 204B pay and thus defrauded her of increased wages that they knew were due to her. These claims "aris[e] out of . . . misrepresentation [or] deceit," and thus fall within Section 2680(h). Accordingly, sovereign immunity bars Plaintiff's fraud-based tort claims against USPS, and such claims shall be dismissed with prejudice.

### ii. Fair Labor Standards Act and Equal Pay Act

In her initial complaint, Plaintiff invoked 29 U.S.C. § 218, a provision of the FLSA, and 29 C.F.R. § 785.7, a regulation regarding judicial construction of the FLSA. Plaintiff does not make reference to these provisions or any other portion of the FLSA in her Amended Complaint. Thus it is not clear whether Plaintiff intends to press claims under the FLSA. Nonetheless, to the extent that she seeks to maintain a claim under the FLSA, such a claim must fail: her assertions that she should have been paid at an increased rate for her temporary supervisory detail "are not cognizable under the FLSA, which requires payment of minimum wages and overtime wages

only." *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 244 (3d Cir. 2014).

Nor can Plaintiff maintain an action under the Equal Pay Act, which has been codified within the FLSA at 29 U.S.C. § 206(d). "In order to make out a case under the Equal Pay Act, the plaintiff must show that members of the opposite sex get paid more for equal work 'on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" *Delprato v. Day Chevrolet Inc.*, 427 F. App'x 86, 89 (3d Cir. 2011) (quoting *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974)). Plaintiff alleges that a male employee, Mr. Apoh, received increased pay when he held a 204B post and served in "the exact same position" as Plaintiff. However, Plaintiff does not provide any factual statements to support this bare assertion. Further, attached to the Amended Complaint, Plaintiff included a letter regarding a dispute between APWU and USPS related to Mr. Apoh and 204B positions generally, which indicated that USPS viewed Mr. Apoh as a unique case because he filled a supervisory vacancy. Plaintiff does not allege that she was similarly situated. Thus Plaintiff's submissions to the Court do not indicate that Mr. Apoh's pay would provide a basis for an Equal Pay Act violation.

### iii. Labor Management Relations Act and Collective Bargaining Agreement

Because Plaintiff does not specify causes of action in the Amended Complaint, it is not clear whether Plaintiff intends to bring suit for a violation of the APWU Collective Bargaining Agreement ("CBA"). Nonetheless, because Plaintiff's submissions suggest such a claim, the Court construes Plaintiff's complaint to raise a claim for violation of the CBA.

Section 301 of the LMRA provides federal courts with jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce," such as the CBA here. 29 U.S.C. § 185(a). However, "[i]t has

long been an established precept of federal labor law that the method of dispute resolution agreed to by the parties in their labor agreement takes primacy over civil actions for breach of contract." *Seborowski v. Pittsburgh Press Co.*, 188 F.3d 163, 167-68 (3d Cir. 1999). Accordingly, "[b]efore bringing an action under Section 301 of the LMRA, a litigant must generally exhaust all available administrative remedies agreed upon by the employer and the union." *Prof'l Emergency Med. Servs. Ass'n of New Jersey IAFF Local 4610 PFANJ AFLCIO v. Monmouth Ocean Hosp. Servs. Corp.*, 680 F. App'x 100, 104-05 (3d Cir. 2017) (citing *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652 (1965)).

Plaintiff's submissions to the Court suggest she is seeking to assert two potential violations of the CBA. First, Plaintiff alleges that she raised her 204B pay issue with USPS through the Union, and that the Union settled the grievance, without her authorization, for $500. Second, Plaintiff argues in her briefing that her hours were unduly restricted in violation of the CBA.

However, the lack of specificity regarding any violation of the CBA is fatal to any LMRA claim. Plaintiff has not explained how USPS's actions may have violated the terms of the CBA. Indeed, with regard to the 204B issue, the CBA grants Union officials the authority to settle disputes, and thus it appears the 204B settlement did not violate the CBA.[2] Further, in the Amended Complaint, Plaintiff appears to specifically disclaim reliance on the CBA's protections with regard to the 204B issue: she alleges that "[i]n the position of 2[04]B duty Supervisor, APWU Union Contract rules do not apply," and further avers that "thru the use of the 204B

---

[2] As Defendants note in their briefing, the CBA is a public document, available online at http://www.apwu.org/sites/apwu/files/resource-files/_%5BMar16%2717%5D%20Online_2015-18%20APWU%20CBA.pdf. Plaintiff does not dispute the authenticity of this document and appears to ground her suit at least partially in reliance on the CBA. Accordingly, the Court may consider the CBA in deciding the motion to dismiss. *See Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016) ("In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.").

program 'bargaining unit members' step out of their bargaining unit protections temporarily while they are listed contractually under the 'Management' umbrella." Thus Plaintiff has not stated a LMRA claim for a violation of the CBA. *See Johnson v. Laundry Workers LCL 141 & Agents*, 419 F. App'x 146, 148 (3d Cir. 2011) (affirming dismissal where plaintiff "fails . . . to offer any indication as to how [her treatment] violated the CBA's terms").

Further, even if she were basing a claim on a violation of the CBA, it does not appear that Plaintiff has complied with LMRA's exhaustion requirement. The CBA provides certain salary protections for covered employees and sets out a dispute resolution procedure for pay issues. The dispute mechanism has several layers of review and provides for arbitration. With regard to both the 204B and the restricted hours issues, it appears that Plaintiff has pursued but not exhausted the remedies available under the CBA. Plaintiff took up her 204B pay dispute through the Union, which the Union settled, but Plaintiff's allegations indicate that she may be pursuing arbitration. Plaintiff's allegations also indicate that she may have taken up her restricted hours dispute with the Union, though the status of any such grievance is not clear.

Accordingly, because Plaintiff has (i) failed to specify how the CBA may have been violated, (ii) disclaimed reliance on the CBA with regard to the 204B pay issue, and (iii) failed to adequately allege exhaustion of remedies through the Union, she has not stated a cognizable LMRA claim.

### iv. Title VII Claims

In her Amended Complaint, Plaintiff repeatedly invokes two types of claims involving Title VII: (1) hostile work environment, due to the mistreatment at the hands of coworkers; and (2) retaliation for filing grievances related to the mistreatment, in the form of USPS refusing to pay Plaintiff for her increased wages for the 204B detail.

9

Title VII prohibits employers from discriminating on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–2. "Title VII . . . does not set forth a general civility code for the American workplace," *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks omitted), and does not provide a remedy for generalized unfair treatment, *see Curay-Cramer v. Ursuline Acad. of Wilmington, De., Inc.*, 450 F.3d 130, 135 (3d Cir. 2006). "To succeed on a hostile work environment claim, the plaintiff must establish that 1) the employee suffered intentional discrimination because of his/her sex [or other protected characteristic], 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of respondeat superior liability." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013). A plaintiff alleging Title VII retaliation "must demonstrate that: 1) [s]he engaged in conduct protected by Title VII; 2) h[er] employer took an adverse action against h[er] either after or contemporaneous with the protected activity; and 3) a causal link exists between h[er] protected conduct and the employer's adverse action." *Slagle v. City of Clarion*, 435 F.3d 262, 265 (3d Cir. 2006).

Additionally, a federal employee plaintiff bringing an employment discrimination claim under Title VII must exhaust available administrative remedies. *See* 42 U.S.C. § 2000e-16 (providing Title VII remedies for certain federal employees, including those "in the United States Postal Service"); *see also id.* at § 2000e–5(f). The exhaustion scheme mandates that individuals pursue their specific grievances through the Equal Employment Opportunity Commission ("EEOC") within certain time limitations, and either receive a final EEOC determination or await the expiration of a 180 day period of inaction before filing a civil suit. *Id.* at § 2000e–16(c); *see also Niskey v. Kelly*, 859 F.3d 1, 6 (D.C. Cir. 2017) (setting forth "labyrinthine" Title

VII exhaustion requirements applicable to federal employees). "Exhaustion of administrative remedies is . . . a prerequisite for suit under Title VII . . . in the nature of statutes of limitation." *Burg v. U.S. Dep't of Health And Human Servs.*, 387 F. App'x 237, 241 (3d Cir. 2010). Dismissal is appropriate where a plaintiff has failed to exhaust. *See, e.g.*, *Slingland v. Donahoe*, 542 F. App'x 189, 192 (3d Cir. 2013).

Defendants argue that any Title VII claim must be dismissed for failure to exhaust. The Amended Complaint indicates that Plaintiff has pursued some claims with the EEOC, and "was told that [she] would be allowed to file a Formal EEO complaint." Plaintiff does not specify what issues or incidents were the basis of her complaint with the EEOC. Neither does she allege that she received a final decision on her complaint, in the form of right-to-sue letter or equivalent notification from the EEOC, or that the EEOC failed to take any appropriate action on her complaint for 180 days in a manner enabling her to bring suit. *See* 42 U.S.C. § 2000e-16(c). Nor does Plaintiff give a date of receipt of any communication regarding her EEOC complaints. Accordingly, any claims arising from Title VII must be dismissed for failure to exhaust.

Plaintiff's Title VII claims fail for the separate reason that she has not alleged that any harassment she suffered was discriminatory—*i.e.*, based on her gender or other protected characteristic. Though Plaintiff attaches in-depth accounts of workplace disputes, Plaintiff has not provided a basis to infer that any of the incidents occurred "because of" her gender or other protected characteristic. *Greer v. Mondelez Glob., Inc.*, 590 F. App'x 170, 173 (3d Cir. 2014). Thus her hostile work environment claim fails. *Id.* This defect is also fatal to any Title VII retaliation claim. In the absence of an allegation of discrimination, it appears that Plaintiff's harassment complaints stemmed from generalized unfair treatment. Thus Plaintiff's complaints were not "protected activity" under Title VII, and any retaliation relating to the complaints is not

11

cognizable under Title VII. *Curay–Cramer*, 450 F.3d at 135.

Accordingly, Plaintiff's Title VII claims shall be dismissed.

### v. Negligent and Intentional Infliction of Emotional Distress

Plaintiff also asserts that USPS's handling of the harassment and pay disputes amounts to negligent and intentional infliction of emotional distress, and that she has suffered significant health problems as a result of her employment.

The Federal Employees Compensation Action ("FECA"), 5 U.S.C. §§ 8101 *et seq.*, permits federal employees, "including Postal Service employees," to recover for "their wages lost and medical costs incurred as a result of injuries sustained in the performance of their duties." *Miller v. Bolger*, 802 F.2d 660, 662 (3d Cir. 1986). "The compensation which is awarded under FECA is determined using exhaustive statutory guidelines, and is under the administration of the Secretary of Labor, who is the ultimate arbiter of the amount, if any, of compensation." *Heilman v. United States*, 731 F.2d 1104, 1109 (3d Cir. 1984). "FECA is also the exclusive remedy for injuries falling within its coverage." *Id.* Accordingly, "where FECA applies, it unambiguously precludes all other liability of the United States," meaning that a federal employee may not sue for damages under, for example, the FTCA for any injury falling within FECA's reach. *Elman v. United States*, 173 F.3d 486, 489 (3d Cir. 1999) (internal quotation marks omitted). "The threshold requirement for determining FECA coverage is that the injuries alleged must be 'sustained while in the performance of [the employee's] duty." *Heilman*, 731 F.2d at 1110 (quoting 5 U.S.C. § 8102). FECA applies to both intentional and negligent acts. *Id.* at 1111 n.6.

"If a claim is covered by the FECA, a federal court lacks subject matter jurisdiction to entertain the claim." *Horton v. United States,* 144 F. App'x 931, 932 (3d Cir. 2005) (citing 5

U.S.C. § 8128(b)). Accordingly, "jurisdiction is limited to determining if a substantial question of coverage under FECA exists." *Id.* (internal quotation marks omitted). "A substantial question exists unless it is 'certain that the Secretary of Labor] would find no coverage.'" *Id.* (quoting *DiPippa v. United States*, 687 F.2d 14, 16 (3d Cir. 1982)) (brackets omitted).

Plaintiff's allegations indicate that any injuries were "sustained while in the performance of [her] duty." 5 U.S.C. § 8102. As set out in the Amended Complaint, all relevant interactions took place at work or in relation to Plaintiff's employment. "Thus, on the very face of the complaint, the injuries complained of were suffered by [Plaintiff] in [her] capacity as a civilian employee . . . and therefore subject matter jurisdiction is lacking in the courts to entertain actions apart from FECA." *Heilman*, 731 F.2d at 1110. Thus the negligent and intentional infliction of emotional distress claims shall be dismissed with prejudice.

### vi. Consumer Product Safety Whistleblower Protection

In her original complaint, Plaintiff cited 15 U.S.C. § 2087 of CPSIA. Plaintiff does not refer to this provision in her Amended Complaint, but to the extent that she seeks to bring such a claim, it fails. Section 2087 "protects employees who refuse to participate in CSPIA-violating conduct, or who furnish their employers or the government (state or federal) with information related to a CSPIA violation." *Wilson v. EI DuPont de Nemours & Co.*, 710 F. App'x 57 (3d Cir. 2018). No facts are pled that in any way relate to a consumer product safety issue, and thus there is no basis for a CPSIA claim. Further, complaints under this provision must be presented to the Secretary of Labor before filing civil suit. *See* 15 U.S.C. § 2087(b).

### B. Claims Against Individual Employees

In her original complaint, Plaintiff named four individual employees as defendants: Derek Palmer, Eric Pugar, Richard Wilson, and Mark Killen. Plaintiff does not specify any

13

defendants in her Amended Complaint, and thus it is not clear whether she seeks to maintain suit against any of the four individuals. To the extent that Plaintiff continues to press any claims against the individual Defendants, such claims fail.

As recounted above, the Amended Complaint contains only sparse allegations regarding the individual Defendants, which generally indicate that all four were aware of Plaintiff's pay dispute and expressed a belief that she should prevail and be paid at a higher rate. Given the paucity of information, it is not apparent how any of the individual Defendants' actions might provide a basis for liability.

In her briefing, Plaintiff suggests that she seeks to sue the individual Defendants on a fraud theory. But the Amended Complaint does not provide any allegations that might support a fraud claim against the individual Defendants.[3] Though she does aver that the individual Defendants took her side of the 204B issue, and that Eric Pugar participated in a phone call where Plaintiff was offered a $1000 settlement, she does not allege that any of the individuals made any misrepresentations, or that she relied on a misrepresentations by the Defendants. Accordingly, the Amended Complaint does not state a fraud claim against any of the individual Defendants.

Further, individual federal employees generally enjoy absolute immunity from tort claims. *See Schrob v. Catterson*, 967 F.2d 929, 934 (3d Cir. 1992). The FTCA stipulates that the United States, rather than its individual employees, is the proper defendant in any suit arising from federal employees' tortious actions occurring within the scope of their employment. *See* 28 U.S.C. § 2679(b). The FTCA also provides a mechanism to substitute the United States for any

---

[3] In Pennsylvania, "[t]o establish common law fraud, a plaintiff must prove: (1) misrepresentation of a material fact; (2) scienter; (3) intention by the declarant to induce action; (4) justifiable reliance by the party defrauded upon the misrepresentation; and (5) damage to the party defrauded as a proximate result." *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 225 (3d Cir. 2008), *as amended* (Nov. 6, 2008) (quoting *Colaizzi v. Beck*, 895 A.2d 36, 39 (Pa. Super. Ct. 2006)).

individually named defendant by Attorney General certification. *See* 28 U.S.C. § 2679(d). "[T]he Attorney General's certification, although subject to judicial review, is *prima facie* evidence that the employee's challenged conduct was within the scope of employment," making the United States, rather than the individual, the appropriate defendant. *Schrob*, 967 F.2d at 935. However, "[i]f the matter is disputed, the burden then shifts to the plaintiff, who must come forward with specific facts rebutting the certification." *Id.*

Defendants request that their briefing be construed as a certification to substitute the United States for the individual Defendants. Plaintiff has not disputed that the individuals' actions were within the course of their employment. Accordingly, it appears that the United States, rather than the individuals, is the appropriate defendant for any tort claim. However, because Plaintiff has not adequately alleged a claim against the individual Defendants, the Court finds it unnecessary to decide the substitution question at this juncture.

## IV. Conclusion

Plaintiff has failed to state a claim and Defendants' motion to dismiss the Amended Complaint shall be granted. However, because Plaintiff proceeds pro se, Plaintiff shall be granted an opportunity to refile any claims not barred by the FTCA or the FECA. For the reasons given, the fraud, intentional infliction of emotional distress, and negligent infliction of emotional distress claims against USPS are dismissed with prejudice, and all remaining claims are dismissed without prejudice. An appropriate order follows.

**BY THE COURT:**

**/s/Wendy Beetlestone, J.**

_____

**WENDY BEETLESTONE, J.**